


# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OLIVER STEVENSON, JR.,<br>Plaintiff | : <br>: CIVIL NO. 1:CV-00-0274<br>: |
| v | : (KANE, J.)<br>: |
| WILLIAM J. HENDERSON,<br>POSTMASTER GENERAL,<br>UNITED STATES POSTAL<br>SERVICE,<br>Defendants | :<br>:<br>:<br>:<br>: |

FILED
SCRANTON

AUG 16 2002

PER ___/s/___
DEPUTY CLERK

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I.  Statement of the Case

Plaintiff, Oliver Stevenson, Jr., brings this complaint pursuant to the Age Discrimination in Employment Act (hereinafter "ADEA") 29 U.S.C. § 621 et seq. Plaintiff alleges that he was discriminated against on the basis of his age (54.5 years old) in connection with the following issues:

> (1) He received a Notice of Reduction in Force dated March 24, 1997 and that he was not given adequate assistance in finding a new position during the 1997 Reduction in Force in Boston; and

1

(2) He was not afforded non-competitive consideration for the position of Plant Manager, Manchester, New Hampshire.

## II.   Statement of Facts

Plaintiff was born on September 12, 1942. On February 7, 1997, Plant Manager Kenneth F. Winters sent all employees of the Boston Processing and Distribution Center ("P&DC") a General Notice of Reduction-in-Force ("RIF"). The Notice advised them that a RIF was necessary because various operations were being moved from the Boston P&DC to the Northwest Boston Plan. The Notice further advised that "[it [was anticipated that the RIF will result in reassignment of EAS[1] employees to positions at a lower grade level." (Exhibit 1)

A. <u>Placement Assistance During RIF</u>

The Boston RIF was conducted in accordance with federal regulations published at 5 C.F.R. § 351 and the United States Postal Service's own policy as set out in a memorandum from Gayle Sonnenberg, Vice President, Tactical Marketing and Sales Development, dated December 14, 1995. (Exhibits 15 and 16). The Postal Service's placement procedures in RIF avoidance and post-RIF placement allow for employees to be placed in any position within the Postal Service for

---

[1]Executive and administrative schedule (EAS) - A salary structure that applies to most managerial and administrative USPS employees. <u>Glossary of Postal Terms</u> Publication 2, at 41 (May 1997).

2

which they are qualified. However, the gaining manager must agree to the assignment and relocation benefits are at the discretion of the manager. According to Mr. Barsi, a RIF Compliance Specialist, Team Leader for the Postal Service in Washington, D.C., it is generally more difficult to place higher level employees (EAS-23 to EAS-25) because there are fewer positions at those levels, and managers are more selective about whom they choose because those positions have high levels of responsibility. Accordingly, it was not within the authority of the Boston P&DC to direct another District Manager to place Plaintiff in a particular position in his or her structure.

By letter dated March 14, 1997, Mr. Barsi advised Plaintiff that due to the RIF, he would be released from his position as Senior Manager, Distribution Operations, EAS-25, effective May 24, 1997. (Exhibit 2) In light of the RIF, Plaintiff was offered, but declined, two different positions in the Boston P&DC by Plant Manager, Kenneth Winters. On March 20, 1997, Plaintiff declined the position of Operations Support Specialist, EAS-18. Then on April 17, 1997, Plaintiff declined a position as the Manager, Distribution Operation, EAS-20 at the Priority Mail Facility.

Plaintiff continued to seek a position at a level comparable to the level 25 position he had held prior to the RIF. In the RIF process, however, preference

eligible employees have first consideration for placement in vacant positions. 5 C.F.R. Part 351.501(a). As such, employees with a veteran's preference are placed before other employees. Plaintiff and John Powers III held the two EAS-25, Senior Manager Distribution Operations positions prior to the RIF. Neither Plaintiff nor Powers is a veteran. Of the original six EAS-24 positions, veterans held all except the one held by Charlie Lynch. In the post-RIF structure of the Boston P&DC, there were no EAS-25 positions and only three EAS-24 positions. The three EAS-24 positions were awarded to preference eligible veterans (Ed Carson, Arthur Connolly, and David Coughlin). Of the former EAS-24 employees remaining, even those who were preference eligible were placed in lower level positions: both John Carroll and Paul McGuire went from an EAS-24 to an EAS-22. Mr. Lynch was also placed in a lower level position, going from an EAS-24 to and EAS-20.

On April 8, 1997, dissatisfied with his previous offers, Plaintiff wrote to Winters requesting assistance in obtaining the position of Plant manager, Lehigh Valley, Pennsylvania. By letter dated April 29, 1997, Mary Burrell, Manager Human Resources, Boston District, and Mr. Holt, Area Human Resources Analyst, had offered to assist Plaintiff in non-competitive placement to vacancies to which he could apply. As of the date of the letter, however, there were no EAS-25 or EAS-24 plant vacancies in the Northeast Area. The position of Plant Manager,

Manchester, formerly an EAS-25 position, had recently been changed to a PCES[2] position. Ms. Burrell also advised Plaintiff that they would hold the EAS-20 Manager, Distribution Operations, position in Boston open for him until May 24, 1997. Mr. Winters continued his attempts to find a position that Plaintiff would deem suitable (e.g. making calls to the Harrisburg District concerning Plaintiff's interest in the Plant Manager position at Lehigh Valley). As late as May 13, 1997, Plaintiff continued to assert his preference for a position within one or two levels of his present level. (Exhibit 3, Pg. 3). He was also presented with an offer for a Level 18 Postmaster position in Fayetteville, Pennsylvania, which he declined.

Moreover, Ms. Burrell arranged for Plaintiff to meet with Mr. Holt, Mr. Winters, and Mr. Pento to address his concerns about possible placement opportunities. (Exhibit 4). There is nothing in the record to suggest that any other employee affected by the Boston RIF received more assistance than did the Plaintiff. In fact, Plaintiff was the only employee who requested assistance from Plant Manager, Mr. Winters, concerning placement outside the Boston area.

In a May 20, 1997 letter to Mary Burrell, Plaintiff formally requested

---

[2]Postal Career Executive Service (PCES) - a staffing category that develops and maintains a group of employees for key management positions. There are two levels in PCES: Level 1 includes district, area and Headquarters executives, and Level II consists of USPS officers, including vice presidents. Glossary of Postal Terms, Publication 32, at 87 (May 1997).

noncompetitive consideration for the position of Postmaster, Fayetteville, Pennsylvania (Level 18), with two years protected salary and normal relocation expenses and reimbursements. (Exhibit 5). In a memorandum dated May 23, 1997, Mary Burrell confirmed Plaintiff's placement in the Postmaster position.[3] (Exhibit 6).

### B. Request for Lateral Appointment to Position of Plant Manchester

On December 17, 1996, Plaintiff sent a letter to Jon M. Steele, Vice President, Northeast Area Operations for the Postal Service, requesting a lateral appointment to the position of Plant Manager, Manchester, New Hampshire. (Exhibit 7). In response, Mary Burrell advised Plaintiff by a letter sent on January 14, 1997, that the position had recently become vacant and that his request would be

---

[3]Plaintiff's letter (May 20) also stated: "It is furter understood, if selected for the foregoing position, I will have the option to apply for a housing purchase exception under the relocation procedures which, if granted, will resolve all issues, i.e., EEO, or any other avenues." Mary Burrell's letter (May 23) advised Plaintiff to submit his request for a housing purchase exception to her so that she could coordinate it with Finance. Plaintiff's request to use the Relocation Management Firm ("RMF") for home purchase was approved on June 24, 1997.
   Plaintiff contends that he has not received a full resolution of his issues. In a July 15, 1997 letter to Rafael Martorell, Appeals Review Coordinator, Plaintiff asserts that he requested, in addition to the services of the RMF, that the Postal Service reimburse him for the difference between the present sale price, along with the purchase of his land lease option, and his original 1986 purchase for a total of $120,600. EEO Investigation Report pg. 130. Further, Plaintiff stated, "[m]y full reimbursement is a minimum requirement in any settlement of my complaints."

kept on file. (Exhibit 8). In a letter dated April 14, 1997, Mary Burrell informed Plaintiff that Headquarters[4] gave the Area Vice Presidents options for staffing certain Lead Plant Manager positions, such as the one in Manchester. (Exhibit 9). The positions could be filled as either an EAS or PCES position. Id. Mr. Steele elected to fill it as a PCES position. Mr. Steele's stated reason for filling Lead Plant Manager positions, including the one in Manchester, with PCES employees was that it provided better compensation, thereby elevating the position's prestige and consequently giving co-equal hierarchy status with the comparable District Manager positions. By doing so, Mr. Steele envisioned that the relationships between Lead Plant Managers and District Managers would become less like that between bosses and their subordinates and would foster a more team-oriented working relationship between the two positions. In addition, changing the

---

[4]Plaintiff's letter (May 20) also stated: "It is further understood, if selected for the foregoing position, I will have the option to apply for a housing purchase exception under the relocation procedures which, if granted, will resolve all issued, i.e., EEO, or any other avenues." Mary Burrell's letter (May 23) advised Complaintant to submit his request for a housing purchase exception to her so that she could coordinate it with Finance. Plaintiff's request to use the Relocation Management Firm ("RMF") for home purchase was approved on June 24, 1997.
    Plaintiff contends that he has not received a full resolution of his issues. In a July 15, 1997 letter to Rafael Martorell, Appeals Review Coordinator, Plaintiff asserts that he requested, in addition to the services of the RMF, that the Postal Service reimburse him for the difference between the present sale price, along with the purchase of his land lease option, and his original 1986 purchase, for a total of $120,600. EEO Investigation Report pg. 130. Further, Plaintiff stated, "[m]y full reimbursement is a minimum requirement in any settlement of my complaints."

7

Manchester position to PCES made the position more attractive to well-qualified candidates. Of the three Lead Plant Manager positions that could have been upgraded to PCES, Manchester was the first to become vacant. Since then, the other two have also been changed to PCES.

At the time the Manchester Lead Plant Manager position was filled as PCES, it was assigned to a new list, Category 4 Plants. (Exhibit 10). No successor list existed for these positions. Id Consequently, Headquarters allowed the Area Vice Presidents to use the Category 3 Plants Potential Corporate Succession Planning Pool list or any other PCES Corporate Succession Planning list to fill the position. According to PCES selection procedures, "[v]acant executive positions will be filled by one of the following methods...selection of an individual who has been identified a potential successor for the vacant position, or, outside recruitment." Both individuals considered by Mr. Steele for the Manchester position were from the Corporate Succession Planning Pool, Northeast Area Succession Plan, while Plaintiff was not. Mr. Steele considered Barry L. Moore, age 44, born November 10, 1953, and Dennis G. Wnuk, age 47, born May 28, 1951. Plaintiff was not eligible for the Manchester Plant Manager position due to its designation as a PCES position.

### III. Questions Presented

1. Whether or not Plaintiff was discriminated against on the basis of his age when he alleges he was not given adequate assistance after the 1997 Reduction in Force and accepted a position as Postmaster in Fayetteville, Pennsylvania.

2. Whether or not Plaintiff was discriminated against on the basis of his age when he was not offered the position of Plant Manager, Manchester, New Hampshire.

Suggested answers in the negative.

### IV. Argument

#### A. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as matter of law." Fed. R. Civ. P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992). After such a showing has been made, the nonmoving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact. Rather, the nonmoving party must go beyond the

pleadings and offer specific evidence contradicting the facts averred by the movant. Lujan v. Nat'l. Wildlife Fed'n., 497 U.S. 871, 888 (1990); Fed. R. Civ. P. 46(e). "Once the moving party has carried the initial burden of showing that no genuine issue of material fact exists, [citation omitted] the nonmoving party...'must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file'." Pastore v. Bell Tel. Co. of Pennsylvania, 24 F.3d 508, 511 (3d Cir. 1994)(quoting Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. Id. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250. If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). All inferences, however,

10

"should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true'." Pastore, 24 F.3d at 512 (quoting Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert denied, 507 U.S. 912 (1993)). "Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent." Kostar v. Pepsi-Cola Metro. Bottling. Co., Inc. No. Civ. A. 96-7130, 1998 WL 748306, *2 (E.D. Pa. October 23, 1998) (citing Big Apple BMW, 974 F.2d at 1363).

### B. The Standard for the Burden And Order of Proof In ADEA Cases

The Age Discrimination in Employment Act ("ADEA") provides, in pertinent part:

> In shall be unlawful for an employer...to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age...to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age...

11

29 U.S.C. §§ 623(a)(1), (a)(2). The standards for the burden and order of proof in ADEA cases are the same as those in cases of discrimination arising under Title VII, See Stanziale v. Jargowsky, 200 F.3d 101, 104 (3rd Cir. 2000).

The Supreme Court has established the allocation of the burden of production and an order for the presentation of proof in [ADEA] discriminatory treatment cases. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed. 2d 668 (1973). The plaintiff is required to establish a prima facie case consisting of four elements: (1) membership in a protected age group; (2) qualification for the position; (3) an adverse employment decision/discharge; and (4) that the decision/discharge took place under circumstances giving rise to an inference of discrimination. See Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3rd Cir. 1995). The requirements for establishing a prima facie case are "minimal." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 505, 113 S. Ct. 2742, 125 L.Ed. 2d 407 (1993);

In either type of case, a plaintiff must first produce evidence sufficient to convince a reasonable factfinder as to all elements of a prima facie case of discrimination. Stanziale v. Jargowski, 200 F.3d 101, 104 (3rd Cir. 2000). If a plaintiff establishes a prima facie case, the burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is

sufficient, if believed to support a finding that the defendant had a legitimate, nondiscriminatory reason for the adverse employment decision. See Id. If a defendant satisfies this burden, a plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Id.

"Any legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case." Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997). Once the defendant articulates a non-discriminatory reason, the presumption raised by the prima facie case is rebutted and the McDonnell Douglas framework no longer applies. Id. At all times, however, the ultimate burden of persuading the trier of fact that the defendant discriminated against the plaintiff remains with the plaintiff. Id.

Then, the plaintiff has a full and fair opportunity to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). To discredit the employer's proffered reason, the plaintiff cannot

13

simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether a discriminatory animus motivated the employer, not whether the employer is "wise, shrewd, prudent, or competent." Fuentes v. Perskie, 32 F.3d 759, 763-64 (3d Cir. 1994) (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 533 (3rd Cir.), cert. denied, 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed. 2d 56 (1993)). Rather, the nonmoving plaintiff must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Fuentes, 32 F.3d at 765 (citations and internal quotations omitted.). See Ezold, 983 F.2d at 527 ("plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision") (quoting Billet v. CIGNA Corp., 940 F.2d 812, 828 (3d Cir. 1991)).

### C. Plaintiff Fails to Establish a Prima Facie Case of Discrimination Based Upon Age

In order for Plaintiff to establish a prima facie case under the ADEA in connection with his not being placed in the position of Plant Manager, Manchester, New Hampshire, he must establish: (1) that he was in the protected age group, i.e.,

14

that he was at least 40 years of age at the time of the decision; (2) that he was qualified for the position; (3) that he was not selected for the position; and (4) that someone outside the protected group was selected.

Plaintiff fails to establish the second and fourth prongs of his prima facie case.[5] Jon Steele, Vice President, Northeast Areas Operations, utilized the discretion afforded by Headquarters to convert the Manchester Plant to PCES. (Exhibits 9 and 14). As a result, only persons on the Corporate Succession Planning list were eligible to be considered for the position of Plant Manager. Id. It is undisputed that Plaintiff was not on that list. Moreover, Barry Moore, who was selected for the position, was 44 years old at the time of his appointment. (Exhibit 9). Therefore, Mr. Moore was in the same protected class as the Plaintiff. In Jaworski v. Westplex Corp., No. 97-CV-6434T, 1998 U.S. Dist. LEXIS 22090 (W.D.N.Y. 1998), the court found no age discrimination where a replacement worker, although 9 years younger, was within the same protected class. Further, the other candidate considered, Dennis Wnuk (47 years old), was also in the same protected class as the Plaintiff. Finally, Jon Steele, the decision-maker, was 52

---

[5]The first and third prongs are not at issue. Plaintiff at 54.5 years old, was within the protected age class. See Cobbs, 1999 U.S. Dist. LEXIS 5786, at *12; 29 U.S.C. §§ 623(a)(1), 631(a). Also, the position of Plant Manager, Manchester, was offered and accepted by Barry Moore.

15

years old when he made the selection for Plant Manager. When the decision-maker is in the same protected class as the Plaintiff, a claim of age discrimination is less plausible. See Morris v. Northrop Grumman Corp., 37 F. Supp 2d 556 (E.D.N.Y. 1999) (noting that an inference of discrimination may arise where a position is filled by a selecting official who is not a member of the plaintiff's protected class); Mauro v. Southern New England Telecoms, No. 3:96-CV-00161, 1999 U.S. Dist. LEXIS 5516 (D. Conn. 1999) (factors for age discrimination include whether the employer hired a substantially younger person). Navin v. Lower Marion School District, 206 F.3d 323, 7-9 (3rd Cir. 2000). (Where ages do not differ materially from plaintiff's, Court cannot conclude that employer intentionally filled positions in question with someone sufficiently younger to permit an inference of age discrimination.) With respect to the second prong, Plaintiff fails to establish that he was qualified for the position because he was not on the Corporate Succession Planning List. In addition, all persons involved were within the same protected group as Plaintiff. Therefore, Plaintiff has failed to state a prima facie case.

Similarly, Plaintiff is unable to establish a prima facie case in connection with the assistance afforded him during the Boston RIF. Plaintiff fails to establish

the second, third and forth prongs of his prima facie case.[6] The two positions at Plaintiff's EAS-25 level were disbanded following the Boston RIF. Also, the highest remaining positions following the Boston RIF were awarded to preference eligible veterans according to both federal and Postal Service regulations. Plaintiff is not a preference eligible veteran. (Exhibit 17, Pg. 29). He was, however, offered two positions by Plant Manager, Kenneth Winters, which were declined. Ultimately, Plaintiff requested and was placed at the position of Postmaster, Fayetteville, Pennsylvania, EAS-18. Simply put, the Boston RIF eliminated the EAS-25 position for which Plaintiff was qualified. He was not selected for the next best position because both federal and Postal Service regulations require that offers be first made to preference eligible veterans. In essence, Plaintiff's argument would have the Postal Service ignore these requirements that preference eligible veterans be afforded preference. All three EAS-24 positions that remained after the Boston RIF were awarded to veterans. Therefore, Plaintiff fails to establish the necessary elements of a prima facie case.

---

[6] The first prong is not at issue. Plaintiff, at 54.5 years old, was within the protected age class.

17

## IV. CONCLUSION

For the reasons set forth above, the Defendant respectfully requests that this Court dismiss Plaintiff's Complaint pursuant to Rule 56(b) of the Federal Rules of Civil Procedures.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney

MATTHEW E. HAGGERTY
Assistant U.S. Attorney
Ste. 311, P.O. Box 309
Wm. J. Nealon Federal Bldg.
235 N. Washington Avenue
Scranton, PA 18501
Telephone: (570) 348-2800

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OLIVER STEVENSON, JR. | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff | : | 1:CV-00274 |
| | : | |
| v. | : | (KANE, J.) |
| | : | |
| WILLIAM J. HENDERSON, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE, | : | |
| | : | |
| Defendant | : | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

This 12th day of April, 2002, she served a copy of the attached

DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT and STATEMENT OF MATERIAL FACTS

by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place(s) and address(s) stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Scranton, Pennsylvania.

ADDRESSEE(S)
Oliver Stevenson, Jr.
17 Ash Street
Mont Alto, PA 17237

*May Miller*
May Miller
Legal Assistant